**BURKET v CLAYPOOL**

Ohio Appeals, 2nd Dist, Franklin Co

No 3411. Decided Sept 26, 1941

Hamilton & Kramer, Columbus, for plaintiff-appellee.

Francis B. Douglas, for defendant-appellant.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on question of law from the judgment of the Municipal Court of the City of Columbus, Ohio.

Plaintiff's action as set forth in his petition under two separately numbered causes of action was predicated upon the claimed sale by plaintiff to the defendant of a thoroughbred five-year old grey mare ("Fifty Grand") for the sum of $300.00, which it is alleged defendant has failed and refused to pay. The second cause of action incorporated therein all the allegations of the petition relative to the first cause of action and then alleged that there is due and owing plaintiff on a draft drawn on The Citizens National Bank of Chillicothe, Ohio, by defendant, payable to plaintiff the sum of $300.00; that said draft was dated September 6, 1940; that defendant stopped payment on said draft and that there is due and owing plaintiff thereon the sum of "$300.00. The prayer asks for judgment in the sum of $300.00 with interest at 6% from September 6, 1940, together with costs.

Defendant's answer makes specific denial of the substantive part of plaintiff's first cause of action, with the admission that the defendant has failed and refused to pay to the plaintiff the sum of $300.00.

The answer then avers that on or about September 5, 1940, an offer was made by plaintiff through his agent one J. T. Simmons to sell said mare, Fifty Grand, to the defendant for the the sum of $300.00, and that said offer warranted the mare to be in foal to the stud King Bruce; warranted said mare to be in good condition and that plaintiff further agreed to furnish the Jockey Club certificate of registration for said mare forthwith.

The defendant further averred that he had never viewed said mare and that he was compelled to rely upon the representations of plaintiff's agent heretofore stated and do so rely and that said representation was disclosed to be false.

In answer to the second cause of action defendant incorporates therein all the facts and allegations set forth in his first cause of action; admits that on or about the 6th day of September, 1940, he issued a check payable to the plaintiff in the sum of $300.00 drawn on the Citizens National Bank of Chillicothe, Ohio, but advised that said check was not be be deposited until he had received the Jockey Club certificate of registration; that on defendant not receiving said certificate of registration he ordered payment stopped on said check, and denies that there is due and owing plaintiff the sum of $300.00 thereon or any other sum.

Further answering, defendant avers that subsequently he personally examined the said mare, Fifty Grand, and found no evidence to indicate that the said mare was in foal, and further that the mare at that time was in poor

flesh and not in good condition as warranted by plaintiff's agent.

Defendant further avers that the plaintiff's agent knew this defendant was purchasing mares as brood mares and that the acceptance of the plaintiff's offer by this defendant was grounded on the representation of plaintiff's agent that the mare was in foal, that the mare was in good condition, and that the plaintiff could and would furnish to the defendant immediately the said Jockey Club certificate of registration.

Further answering defendant denies that there was any consideration given for said check because of the failure of the plaintiff to perform in accordance with the offer and warranties of his agent. The prayer of the answer asks that plaintiff's action be dismissed and that defendant recover his costs.

Defendant at the time of filing his answer also filed ten separately numbered interrogatories with the request that same be answered by plaintiff. These interrogatories were answered and reference thereto may be made later.

On the trial of the case finding was made in favor of the plaintiff and judgment entered in the sum of $300.00.

Motion for new trial was duly made, overruled and thereafter, within statutory time notice of appeal on question of law was filed.

We have before us transcript of the docket and journal entries, together with original pleadings; duly allowed bill of exceptions and briefs of counsel. One of the principal questions to be determined relates to the contractual relations between the parties. It is claimed by the plaintiff that the only contractual relation between himself and the defendant was through a written memoranda dated September 5, 1940, and signed by himself and the defendant, although at different times and different places. Defendant claims that the agreement was oral, made between himself and Mr. Simmons, the latter acting as the agent of the plaintiff, and that the written memoranda was nothing more than what he terms

a bill of sale transferring the title to the grey mare, Fifty Grand. There is no question between the parties as to the execution and signing of the written memorandum. A legal question is raised as to what it may properly be designated. A narrative of some of the factual questions will be helpful in determining the case.

Sometime early in September, the defendant, Judge Claypool, whose residence is in Chillicothe, Ohio, in company with two friends, drove to Beulah Park to attend the running races then in operation.

Judge Claypool had previously been a breeder of saddle and Percheron horses. On the drive over from Chillicothe, Judge Claypool had mentioned to his friends that he was going into the breeding of thoroughbred horses, and would like to buy a grey mare. Later in the day when they were at the Beulah Park grounds, one of the friends brought to Judge Claypool a Mr. Simmons and introduced the two men. Mr. Simmons was a trainer of running horses having his stables at Beulah Park and living at Grove City. In the course of the conversation, Judge Claypool mentioned a desire to buy a thoroughbred grey mare for breeding purposes. Mr. Simmons replied that he had one named Fifty Grand, grey in color; that she had been bred to King Bruce, the latter owned by a man living near Cleveland, and that the mare was then at that location on a farm near Hudson. During the course of the conversation, Mr. Simmons advised that the mare was owned by Dr. F. C. Burket, of Sandusky, Ohio, and that he thought she could be bought for $300.

According to the testimony of Judge Claypool, Mr. Simmons described the animal, said that she was in good condition, was in foal, and that registration cards were in the hands of Dr. Burket and could be furnished immediately. The defendant says that he then and there informed Mr. Simmons that on his representations he would buy the mare for the sum of $300.00.

It is further testified that Mr. Simmons was to contact Judge Claypool at

his office in the A. I. U. Building, Columbus.

All this testimony was objected to by the plaintiff and objection overruled. We would have no hesitancy in saying that this testimony was inadmissible except for the testimony of Judge Claypool that several days later in a 'phone conversation with Dr. Burket, the latter admitted the agency of Mr. Simmons and confirmed his representations. This part of the conversation was denied by Dr. Burket. The law is well recognized that a party dealing ██ through a person who he claims to be an agent is obligated to prove the agency and the scope of his authority. Another principle of law that is equally well recognized is that agency may not be proved through declarations of ██ the agent. Dr. Burket testifies very positively that Simmons was not his agent; that he had at various times employed him as a trainer but for no other purpose; that he had never authorized him to sell or assist in the sale of this grey mare, Fifty Grand.

On September 5, 1940, Dr. Burket was at the races in Beulah Park and on this date, according to his testimony, Mr. Simmons contacted him and asked him if he would sell the mare Fifty Grand for $300.00. Dr. Burket replied that he was contemplating making a trade for a racing colt, but finally stated that he would sell for that amount and then buy a colt with the cash received. At a later hour, Mr. Simmons returned to Dr. Burket with a paper writing. Dr. Burket then signed. This memoranda of writing is in the words and figures following:

"Grove City, Ohio.
Sept. 5th, 1940.

"This is to certify that I, Dr. F. C. Burket have this day and date sold to Garrett S. Claypool the grey mare 'Fifty Grand' five years old, by Strathleven out of Misty Morn for the sum of three hundred ($300.00). It is agreed between Dr. F. C. Burket and Garrett S. Claypool that in the event that the above mare is returned to racing that there is a balance of four hundred ($400.00) dollars to be paid Theo. Poolos, Knoxville, Tenn., said sum of $400.00 is to be paid out of the first two (2) winning races that the above mare might at any time win. It is further agreed and understood that the above mare was bred to 'King Bruce' in May, 1940, and that Dr. F. C. Burket will assume the stud fee.

To the best of my knowledge the above mare is free from all debts and incumbrances of whatsoever nature other than the above mentioned $400.00 due Theo. Poolos in the event above mare is returned to racing."

After procuring Dr. Burket's signature Mr. Simmons took the paper writing and in a day or two presented the same to Judge Claypool at his office in the A. I. U. Building. Immediately under Dr. Burket's signature was a line for the signature of Judge Claypool and in front of the line the words "agreed to". Judge Claypool attached his signature on the line following the above quoted words. Beside these signatures and a little lower down were two lines and immediately opposite the first line was the word "Witnesses". On the first line appears the signature of J. T. Simmons and on the second was Theda Jacobs. According to the testimony Theda Jacobs was the Secretary for Judge Claypool. Probably this memorandum was executed in duplicate. The copy or copies were retained by Judge Claypool and on September 6, 1940, he addressed a letter on his letterhead to Dr. Burket. This letter, omitting the lithographed letterhead, reads:

"September 6, 1940.
"Dr. F. C. Burket,
513 Columbus Street,
Sandusky, Ohio
Dear Dr. Burket:

Mr. Simmons is in my office, and I am enclosing copy of the bill of sale for the mare, Fifty Grand, together with my check for $300.00 in payment therefor.

I am advised that the only bill against the mare is $15.00 due Mr. White for board. I would rather expect to send for the mare on next Monday, September 9th, so if you will mail your check for the board bill to Mr. White I will have my boys go up and get her the first of the week.

I am not particularly familiar with the breeding and registration of thoroughbred horses, having been breeding Percherons and saddle horses. If your signature is needed on anything to transfer the mare to my name on the books of the Jockey Club I will call upon you for same.

Sincerely yours,

Garrett S. Claypool.

GSC:TJ
Enc."

According to the admitted evidence the original letter, the executed bill of sale and Judge Claypool's check were enclosed, addressed to and received by Dr. Burket in due course of mail. All these papers appear in evidence as exhibits. Within a day or two Judge Claypool called Dr. Burket on the 'phone. Neither knew the other and this was the first and only direct communication that was had between them. This is the particular telephone conversation that Judge Claypool refers to as mentioned earlier in this opinion relative to claimed statements of Dr. Burket that Mr. Simmons was his agent and that he confirmed the representations made. As heretofore stated, this part of the conversation was denied by Dr. Burket.

On September 8th Judge Claypool again wrote to Dr. Burket at Sandusky relative to this transaction. This letter appears in evidence as Plaintiff's Exhibit "C". In the interest of shortening this opinion the letter will not be quoted in full. The first paragraph reads as follows:

"Confirming my telegram in re purchase of the grey mare Fifty Grand I think it best to have you get the certificate on the mare before we entirely complete the transaction, since you have

dealt with the former owner of the mare can no doubt secure the certificate with much less trouble than I could."

Thereafter continues two or three paragraphs relating to this certificate and its importance to Judge Claypool. He closed up the letter by saying, "so if it is agreeable to you I will delay getting the mare and you may hold my check until you learn whether you can secure the certificate within a reasonable time and upon its receipt by me we can complete the transaction by you depositing my check and I will go after the mare and I will pay any board accumulated on her beyond the $15.00 which was due last week."

On or about September 10th or 12th Dr. Burket deposited the check in his bank and in a short period of time information came back that payment had been stopped and that thereupon the bank charged the amount back to his account. On September 17th, Judge Claypool again wrote to Dr. Burket, the second paragraph of which letter reads as follows:

"After considering the improbability of the mare being in foal and the delay involved in securing the Jockey Club certificate, as well as her terrible poor condition I have concluded it best to call off negotiations on the mare much as I am impressed with her breeding. I believe she would be a nice looking mare if fed. She can be fattened up in my opinion so her physical condition would assist her in getting in foal and producing a good colt."

Suit was filed by plaintiff on December 11, 1940. Mr. Simmons was not present or called as a witness by either party. Counsel for defendant claim they did not know his whereabouts and therefore were not able to procure him as a witness. Dr. Burket said that at the time of the trial he was at the races in St. Louis with his stable. Fur-

ther, that his home was at Grove City, and that he had been there continuously for some time before going to St. Louis.

We think we have narrated all the factual questions necessary to determine the appeal.

Appellant's assignments of error are set out under nine separately numbered specifications. Under No. 1, complaint is made that the court erred in overruling defendant's motion to require the plaintiff to elect on which of the two causes of action stated in the petition he desired to proceed. In support of this assignment appellant refers us to §11306 GC, and the case of **Ferguson v Gilbert and Rush, 16 Oh St 88.** Contra this assignment plaintiff refers to the following cases:

**Gartner v Corwine, 57 Oh St 246;**
**Indemnity Co. v Wassman, 120 Oh St 72;**
**Citizens Bank v Closon, 29 Oh St 78;**
**Pavey v Pavey, 30 Oh St 600;**
**Sicard v Distributing Co., 133 Oh St 291, 296;**
**Yochem v Gloria, Inc., 134 Oh St 427;**
**Murphy v Quigley, 21 O. C. C. 313.**

It is our conclusion that the court was not in error in overruling defendant's motion.

The 2nd assignment is relative to the weight of the evidence and in proper order this assignment should be considered following the determination of all other assignments.

Assignment No. 3 complains of admission of evidence over the objection of defendant. but appellant's brief makes no reference to this assignment and we therefore assume that the same is withdrawn.

Assignment of error No. 4 complains that the court erroneously refused to permit evidence presented by the defendant material to the cause. We have examined the three instances wherein specific instances are called to our attention in the briefs. The correctness of the court's judgment is so apparent that we will not take up time in discussion other than to say that no error appears under assignment 4.

Under the 5th assignment of error it is claimed that the court erred in failing to sustain a motion for a judgment on the pleadings before the taking of any evidence. Counsel for appellant in their brief in support of this assignment base it largely on plaintiff's answers to defendant's interrogatories. We find nothing in the answers to the interrogatories that demand judgment for defendant on the pleadings. This assignment of error will be overruled.

Under the 6th assignment of error complaint is made that the trial court erred in failing to sustain a motion to dismiss the cause of plaintiff against the defendant at the close of plaintiff's case.

Assignment of error No. 7 is of similar import, the motion having been made at the close of all the testimony. We have no hesitation in finding that the court did not commit error under assignments 6 and 7.

Assignment No. 8 complains that the trial court committed error in overruling motion for new trial. This, of course, raises all the questions embraced within the previous assignments of error, including No. 2, which we will now take up.

At the outset we are constrained to make reference to a very old saying.

Able lawyers will attend to the affairs of their clients with meticulous care, but frequently will be found extremely negligent in their own business transactions. It is hard to understand how a man of Judge Claypool's learning and experience would agree to pay $300.00 for a breeding mare that he had never seen, to a man that he had never known before, and when the agreement was reduced to writing, not insisting on having incorporated therein all the terms that he now says were agreed upon. All the evidence relating to the conversation between Judge Claypool and Mr. Simmons is improperly in the record unless the defendant-appellant shows by a preponderance of the evidence that Simmons was an agent of

Dr. Burket and authorized to make warranties relative to this grey mare. The fact that Mr. Simmons had previously trained this mare for racing, and had previously trained other horses for the Doctor, and at that time or afterwards had another in training would not in the slightest degree support any claim of agency to sell. As we have heretofore stated, the only reason that this testimony can remain in the record is the testimony of appellant, Dr. Burket, in the telephone conversation a few days after the deal made an admission as to this agency, etc. The evidence on this fact is very meager and there is a serious question as to whether or not it is substantive evidence or a mère conclusion. In the testimony no attempt was made to give the language used by Dr. Burket upon which Judge Claypool predicated his testimony, that he admitted the agency. But waiving this possible infirmity we have the direct evidence of Dr. Burket testifying that he made no such statement at any time. Thereby the matter becomes a factual question and the trial court would be at liberty to accept either version as in his judgment would be proper. The record on this question also presents another legal proposition and one so well recognized that no citation of authorities is necessary.

It is that a written agreement may not be modified by oral evidence. In law, it is a theory that whatever may have been said prior to the execution of the written instrument is merged in the writing. The purpose of putting the agreement in writing is to avoid misunderstandings. If after executing a written instrument parties were permitted to alter its terms by giving evidence of statements made contrary thereto, there would be little protection through the solemnly executed instrument.

We think it makes no difference as to what the written instrument may be designated. Defendant-appellant signed it and in front of his name appears the words "agreed to", which he admits was there when he signed it. This can mean nothing else than that he accepted the terms of this written instrument just as it was worded, and the further fact that he sent the executed instrument, together with a letter and his check, consummated the dealing according to its terms. Counsel for appellant complains that there was no delivery of the mare. Judge Claypool's first letter clearly indicates that he was accepting delivery at the place where the mare was then located, and that he would send his men for her within a short period of time.

Another question demanding careful consideration relates to evidence disclosing that the plaintiff, Dr. Burket, advertised this mare for sale in February, 1941, in the Cromwell Blood Stock Agency Catalogue. This is a publication published in Lexington, Kentucky, and circulating very largely. This particular issue has some 47 pages listing pedigreed horses for sale or trade. Dr. Burket admitted that he authorized this advertisement. The catalogue was introduced in evidence as Defendant's Exhibit 2.

The claim is made that this is conclusive evidence controverting the claim of Dr. Burket that the title to the grey mare had passed to Judge Claypool. It must be conceded that it is very strong supporting evidence, but it is not conclusive.

Dr. Burket explained the advertisement, through his evidence, in this manner:

He says that he hoped to find a prospect for a deal that would be satisfactory to Judge Claypool and thus avoid further time and expense in litigation; that there had been considerable delay in getting the case tried; that time was very important in that it was necessary to make the future booking for the breeding of the mare, and he thought expense and trouble

might be saved both Judge Claypool and himself.

He further stated that had he received any offers óf trade the same would have been communicated to his attorney with the request to take up with attorney for Judge Claypool and see if adjustment could be worked out. This evidence, like all other, presented a factual question for the determination of the trial court. The fact that Dr. Burket had filed his lawsuit and that the same was then pending would lend support to his explanation. Apparently the trial court accepted the explanation. We are unable to say that such a conclusion would be against the manifest weight of the evidence. Considering the claimed error that the finding and judgment of the trial court were against the manifest weight of the evidence, we will say that we have read the record in its entirety and are unable to arrive at the conclusion that there is manifest error in the trial court's finding and judgment. We find inconsistencies in the claims and contentions of both parties. As in all cases it is the duty and obligation of the trier of the facts to make reconciliation and determination.

Considering the record in its entirety we are unable to determine that the record presents any prejudicial error.

The judgment of the Municipal Court will be affirmed and costs adjudged against the appellant.

GEIGER, PJ. & HORNBECK, J., concur.